Before we begin our proceedings, I'd like to turn it over to Judge Hughes who has a motion. Thank you. I have an admission this morning. It's sadly the last week of one of my very excellent law clerks, and I'm incredibly sad to see her go, but I'm also very excited to see her move on to her law firm and watch her pursue what I know is going to be a brilliant and fabulous career. She spent about a year and a half with me. She was with Judge Sleet in the District of Delaware for the year before that, and she's just been an outstanding clerk and really truly an outstanding person as well. So I move the admission of Ketochie Okimbo, who is a member of the Bar and is in good standing with the highest courts of the Commonwealth of Virginia. I have knowledge of her credentials and am satisfied that she possesses the necessary qualifications. I don't have any questions. It's good enough for Judge Hughes. It's certainly good enough for me. Well, we're delighted to grant the motion. Please proceed. Judge Ryan, do you solemnly swear or affirm that you will support yourself as attorney and counsel of this court, uprightly and according to law, and that you will support the Constitution of the United States of America? I do. Welcome to the Bar of the United States Court of Appeals on Federal Circuit. You may be seated. Congratulations. Mazel tov. The first case of argument this morning is 17-1859, MECO USA v. Army. Ms. Picard? Yes. Good morning. May it please the Court, Nicole Picard for RECO USA, Inc. The issue before the Court today is one of basic contract formation and the concepts of offer and acceptance. This case centers on the government-issued Standard Form 1449, or SF-1449, which is a form document that government agencies use as a cover sheet of countless government contracts. Specifically at issue here today is the legal significance of Block 29 on the SF-1449 that the Army issued to RECO in February of 2012. RECO contends that when a contracting officer checked Block 29, she accepted RECO's offer to provide the Army with multifunctional devices, or MFDs. Upon this acceptance, a contract was formed that contained the terms of RECO's offer, which contained termination fee provisions that entitled RECO to termination fees in the event of a discontinuance of any number of the MFDs. The Army asserts that the SF-1449 was not an acceptance, but was rather a counteroffer that rejected RECO's proposal entirely and replaced it with something different. Well, I don't know. I mean, I'm looking at, I guess, Block 29. I guess I'm not exactly clear on how you're reading it. I mean, the government is saying it's part of the SF-1449, and what this signifies is that the SF-1449 continuation sheets were part and parcel of this agreement, and they were not consistent with the changes that you were recommending. So what about Block 29, read in the context of the whole SF-1449, gives you the clarity and the certainty that indeed all this was was an acceptance of your offer and not a counteroffer? Block 29 specifically identifies RECO's offer by date, the January 13, 2012. So it identifies RECO's offer, and then it says your offer is accepted. And with that, that was an objective manifestation of the assent to the terms of RECO's offer that created the contract. Well, it doesn't say it's accepted. It says it's accepted as to items C, schedule. Correct. And then attached to the SF-1449, it listed the specific MFDs that the Army was going to be procuring, but that doesn't mean that it didn't incorporate the terms of RECO's offer that attached to those MFDs. For example, specifications such as TAA compliance and speed of the machines and things like that. But there was other stuff in the SF-1449 that clearly established that there were going to be these terminations that were inconsistent with what you were proposing in your offer, right? We would submit to you that the documents that are physically attached to the SF-1449 don't conflict with the terms of RECO's offer, and that taken together, all the documents can be read consistently. Including the statement of work and the exercise of options and the statements that there's no early termination piece? That's correct. And specifically... Let's say we disagree with you, because I think your reading on that is pretty implausible. Let's say that there's a direct conflict, because it's the same... Isn't all the terms that are attached to the solicitation are the terms that were proposed earlier on that you disagreed with, right? This is the same document. The statement of work, yes. It's the same document that was sent out as a solicitation for quotes. Correct. And you attempted to reject that and turn in a counterproposal. So if you thought that was consistent with your counterproposal, you wouldn't have needed to reject it. So we rejected the fact that the statement of work didn't anticipate having termination charges, which is a commercial industry practice to have termination charges. Right, and you proposed a different offer. Correct. So for you to now come in and say, well, that earlier statement of work that you proposed a counteroffer to is actually consistent with your offer seems, frankly, inconsistent with your course of action here. So RICO proposed an offer, not a counteroffer to an irresponsible solicitation. And I think the provision that you're speaking about specifically says that there's no exercise of termination fees. I don't want to get hung up on this point. But let's just assume that we disagree with you, that your offer is consistent with the statement of work that's attached. Then what happens? I think you can read the entire contract with the offer in it harmoniously so that you can give it back to all of the terms. Well, I don't think you can. The basis for my hypothetical is your offer is inconsistent with the statement of work attached to the solicitation where you say they accepted your offer. What do we do when we have two inconsistent documents? I would submit that you read them as harmoniously as possible. And what happened here was we... Okay, let me make this clear. Your offer says you get early termination fees. Correct. Their response says we will not pay termination fees. Then what do we do? Their response says you can't pay termination fees. My hypothetical is their response says we won't pay termination fees. I'm not talking about the document. I'm talking about a hypothetical. In that case, it would be a rejection of the offer and a counteroffer, yes. But it would have to also justify RICO understanding that it had the power to accept or reject that counteroffer. Did RICO ever tell the government directly that its proposed prices were contingent upon the changes to the terms of the solicitation? RICO's offer was very clear that it had early termination fees. It was listed in the cover letter of the proposal as well as twice in the proposal itself. So I guess the answer is no. There was no direct phone call or email that said we're proposing these, but the proposal itself is very clear that, yes, we're proposing termination fees. You say in your brief that RICO was willing to walk away from the deal if RICO's terms weren't accepted. Where's that in the record? That's in the transcript before the board and in a lot of the emails going back and forth internally within RICO, which is towards the end of the appendix. It's clear that they would walk. Internally you were saying that. Internally, the way I read it, you were saying, if we can't put this over on the Army, we're not going to do it. But leaving aside my characterization, where did you tell the Army, unless you accept our new terms, we're going to walk away from this agreement? I think it's just a matter of offer and acceptance. RICO understood that it was offering something that didn't comport with the solicitation, so it knew that if it was rejected it would be rejected. The question is did the Army understand it? I'm sorry, did the Army understand? That what you were sending was inconsistent because the Army's position is we just saw the pricing and that was good enough for us. Had the Army read the offer, it would have seen that what RICO was proposing was inconsistent with the solicitation. On the other hand, as Judge Kuh said, had RICO read the solicitation, it was also inconsistent. I don't think that... Our position is that the SF-1449 that came back through RICO that said when the contracting specialist said here in the contract was not inconsistent in no way demonstrated to RICO that its terms had been rejected. In fact, they checked Block 29 that said your offer has been accepted. But I still fail to understand how, if the terms of that solicitation and statement of work weren't inconsistent with early termination fees, why you submitted an offer in the first place instead of just accepting that solicitation, which now in your interpretation includes early termination fees. I mean, at some point you understood this solicitation to prohibit early termination fees. But it's the same solicitation you got back when the Army signed Block 29 and attached the same solicitation. So why did your understanding of that solicitation change from when it was first issued to when it was signed after you submitted an offer? Because Block 29 accepted the terms of the offer. That's why their understanding changed. Yes, but it included a solicitation that you had previously seen as inconsistent with how you would perform. Correct. I mean, it seems to me very clear what happened here, and that is the Army didn't read your offer and you didn't read the solicitation that was attached to the offer when it came back, and nobody understood on either side that you were trying to get early termination fees and that they were going to refuse them. But I still don't understand what we're supposed to do about that. I think just by basic contract law there was an offer and there was an acceptance of that offer regardless of what the Army read or didn't read. Your response to Judge Hughes should be, in that case there's no meeting of the minds and there's no contract. In which case we'd probably be in an applied-in-fact contract situation. Terminal law at will. But I would submit you're correct that the solicitation that was put out... I mean, how can you say the Army accepted your offer if it responded with a contract document that's inconsistent with your offer? Because it said that your offer is accepted and that's all that's needed is an objective manifestation. But it didn't just say your offer is accepted. It goes on, it has other language, and it also includes the solicitation. I mean, you know enough about government contracts that this cover page is not the contract. It is this cover page with all the included attachments including the statement of work. And so the fact that it says accepted here means accepted based upon the terms of this entire document. But it's not just the papers that were physically affixed to the SF-1449 that comprise the terms of the contract here. It was also the terms of RICO's offer which were clearly identified on the back of the SF-1449 and then accepted and imported into the contract. In that case, don't at least you have ambiguity? As to the termination fee? As to the existence? I don't believe so. I think that there is no contention here that no contract exists. Both the government and RICO contend that a contract exists. Is the termination fee a key portion of the contract? Yes, Your Honor. Do you have ambiguity about the termination fee or not? No, Your Honor. Because the solicitation stated that the terms of the contract state that there's no termination fees for the exercise of an option year. And RICO's not looking at no termination fees for the failure to exercise an option year. In fact, all option years were exercised here. We're looking for termination fees for the partial discontinuance of an order for just 208 of the multifunctional devices. So if they discontinued all 500 or 600 because they didn't exercise the option, you would get nothing? But if they continue the option but on a partially reduced something, you get an early termination fee? That's not the way the options or the termination fees generally work in that industry, is it? RICO recognized the fact that they were dealing with the government here and not a commercial entity, so that the government couldn't obligate funds beyond a fiscal year. So it understood that there are these option years or these renewal periods upon each year for which it would have to exercise an option. Doesn't the same logic apply to a reduction or a complete lack of exercising an option? I don't understand why that appropriations argument makes any difference as to a partial or a complete reduction. I'm just saying in the government space that they have to obligate the funding, whereas in a commercial space they could just discontinue whenever they will please. But here there was a full option year exercise. Option year one was exercised in full and then a partial discontinuation after that. So this concept that there was no termination fees for the non-exercise of an option year just doesn't apply in this case. And I see that I've now gone into my rebuttal. Why don't we hear from the government? Thank you. May it please the court. The decision of the board in this matter should be affirmed because the board correctly determined that the Army did not assent to the proposed non-compliant early termination provisions. Although you're not arguing that the board's reasoning should be affirmed, I take it. Not in its entirety, no. But the fundamental underlying basis of the board's reasoning, which was RICO was on notice based upon the contents of the contract award document that the Army hadn't accepted the... This is a little difficult on both sides. I mean, it pretty much seems that the Army didn't read the terms of RICO's offer fully and just accepted the prices. And then RICO didn't read the solicitation. It got back and realized you weren't actually accepting their offer. You were going back to the terms of the original solicitation. What would we do if we find there was no meaning of the mines? So if there's no meaning of the mines, there can be no contract either expressed or implied. And that doesn't make a difference, to be quite honest, to the resolution of this matter. If there is no contract whatsoever, then there's no basis for RICO to claim early termination fees. And as a result, the board's decision should still be affirmed because RICO still cannot prevail on its claim. Can you argue standard business practice that the Army never reads those contracts before it signs them? I would not make that argument, no. I think that there was the circumstances of this particular solicitation and procurement process were a bit unusual in that the Army was not contemplating the submission of any terms other than prices and was not looking for proposed alternative terms. And it is also true that it is not precisely clear from the contents of RICO's proposal that its proposal was contingent upon the acceptance of those alternative provisions as opposed to just one question. But the box 29 seems to be quite clear on what's going on here. You check the box and it says your offer, blah, blah, blah, including any additions or changes which are set forth herein, is accepted as to items. What does that mean? It means that it's accepted as to the items that are specified in the attached sheets. And yet, as we acknowledge, it is a purported acceptance as a matter of well-established black-letter contract law. An acceptance is not effective where it includes terms that are not the same as the ones that were offered. So is your view that the phrase including any additions or changes which are set forth herein, meaning that's what establishes your counteroffer, because you say we're accepting it except where we're not, where there's inconsistencies in the existing contract. I think that that language is consistent with the fact that RICO couldn't rely upon that box as a sign that its offer had been accepted in total and that it had no reason to look at the rest of the contract document. But I don't think that that language standing alone is essential. Even if that language hadn't been included, the contract document, in this case, as in every government procurement, contains the terms that the government understands to represent the party's agreement. It seems to me your best position is, assuming that there is a meeting of the minds, that by attaching the original terms, in effect, you're making a counter-counter, and then by action RICO accepts it. The whole thing's a mess, really. Yes, Your Honor. I had experienced the same sentiment while I was preparing the briefing in this matter. But I believe that that is the best logic that can be made and applied to the situation that arose. If we look just at the external manifestations of the parties, which is what we are to do, the Army gave RICO a contract document that plainly did not include the proposed noncompliant terms and that hewed to the original terms of the solicitation. And then lived by it. Yes, and then RICO received that document, made no objections, made no comments, and simply went ahead and performed when the Army began issuing orders against it. What's the law? Years ago we had cases involving patent ambiguities and latent ambiguities. So who's got the burden when there's a patent ambiguity? The contractor has the burden when there's a patent ambiguity. In the solicitation terms, to ask for clarification before entering into the contract, a latent ambiguity is one that doesn't become clear until the parties have entered into performance, and then there is a series of different factors that have to be assessed to be determined whose position is correct. But this is not a latent ambiguity. So your position is, if somebody bothered to read it, it would be patent. It is patent. Even RICO's own language is patently ambiguous. It contains conflicting terms about what the proper damages are to be in the case of a termination. It contains conflicting terms regarding what the initial order is supposed to say when it's issued. No one could have looked at those provisions and thought it would be okay to enter those wholesale into a contract without amending them to make them make sense, to be quite frank. The simple fact of the matter is that the Block 20 line use of the word acceptance is all that RICO has to cling to to attempt to demonstrate that there is a contract that includes the provisions that it's depending on. And frankly, that's simply not a tenable position in light of the rest of the contents of the contract award document. Are there any material differences between the solicitation and the statement of work that's attached to this form and the one that was originally issued as a request for codes? No. The only difference is that there were... And I suppose this wouldn't be part of the statement of work. The statement of work is exactly the same. There were a few solicitation provisions related to the bidding process that were not included because that was over, but otherwise it's the same. And just as one last point, although I don't think it actually makes a difference, but RICO has repeatedly made assertions of fact on appeal that were not found as a factual matter by the board. The board didn't find that RICO was unaware that its provisions hadn't been included in the final contract document. The board didn't find that RICO would have walked away if it had known that the proposed early termination provisions weren't included. And of course, those aren't factual findings that can be made in the first instance on appeal. So RICO's arguments based upon those proposed factual findings, in addition to being irrelevant as a matter of law, are also ill-founded in this procedural posture. Unless the court has further questions. Thank you. Thank you. I would just like to turn back now to the language of Block 29. It specifically says, award of contract. This is your offer, including any additions or changes which are set forth herein. So to the extent that there were any additions or changes included in the pages that were physically affixed to the SF-1449, those were subsumed within the acceptance and don't undermine the validity of that acceptance or the existence of a contract. Moreover, if we accept the government's position here that this were a counteroffer, then practically speaking, RICO could refuse to perform. And once the first delivery order was issued, RICO could have said, no, we reject this. We're not going to perform. And in that case, certainly the government would have found RICO to have been in breach of its contract. So I think just when you step back and practically look at the effect of a counteroffer, that just couldn't pan out that way. I don't understand that. If this had been a government counteroffer and you had decided not to perform, how would there be a contract to breach? I was just saying it for practical purposes. If the government issued this SF-1449... If you had read this as a counteroffer and said, no, we're not going to do this, this is an unacceptable counteroffer, there's no contract. The government can't sue you for breach. That's correct. And RICO maintains that that would be the situation. But I think for practical purposes here, the government understood that there was a contract and it would have gone after RICO for nonperformance once that SF-1449 was issued. Well, they understood that there was a contract under their terms. Correct, but if this were... But you just gave away the case when you said correct. I mean, it sounds like you would have had a pretty good affirmative defense if they would have tried to sue you for breach of contract when you said there is no contract because they didn't accept our offer. They imposed new terms that we declined. I mean, you said they may have tried to sue you, but they would have lost. And that's correct. But I'm just thinking in practical purposes, when you step back and you look at the practicality of this, and SF-1449 was issued and accepted the terms of RICO's offer, this is very standard practice in the government contract world. And at that point, RICO didn't understand it. It's also very standard practice to include the solicitation and the statement of work as part of the contract. And given that you had objected to the statement of work before but now appeared to go ahead and accept it, it seems like the government was also reasonable to understand that you had changed your position. May I respond? I see I'm out of time. Yes. In that case, though, RICO did understand that its offer was accepted, so it understood that the terms that it proposed that were different from the solicitation, which it knew were different than the solicitation, had been accepted and formed the basis of the contract. Thank you. I want to just follow up on one thing. I said to you the government understood it had a contract under its terms, and you said correct to me, and I said you just gave away the case. Do you want to respond to that or just leave it alone? I'm sorry. I meant to say that the government understood a contract had been formed and that RICO was obligated to perform. The terms of those contracts, though, were the terms of RICO's offer, which contained the termination fee provision. I'm sorry if I misspoke. Okay. Thank you. Thank you. Thank you. We thank both parties. This case is submitted.